[Cite as *Pallone v. Ohio Dept. of Natural Resources*, 2013-Ohio-3639.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ROMAN J. PALLONE

    Plaintiff

    v.

OHIO DEPARTMENT OF NATURAL RESOURCES

    Defendant

Case No. 2010-10505

Judge Clark B. Weaver Sr.
Magistrate Anderson M. Renick

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} In 2005, plaintiff began operating a business which was located on Buckeye Lake State Park and leased from a private landowner. He operated the property and building as a restaurant called "Smitty's on the Lake" (Smitty's). Smitty's is surrounded by property owned by defendant, Ohio Department of Natural Resources (ODNR). On September 14, 2008, the remnants of Hurricane Ike traveled through Ohio. During the storm, a silver maple tree located on defendant's property that was adjacent to Smitty's, split in two, causing a branch with a seven-foot circumference to strike Smitty's roof. Defendant removed the fallen tree on September 15, 2008. Plaintiff testified that as a result of the damage caused by the fallen tree, Smitty's closed for six months, but plaintiff continued to lease Smitty's through 2011.

{¶ 3} Plaintiff alleges that defendant was negligent in maintaining and inspecting the trees located adjacent to Smitty's and that such negligence caused the tree to fall and damage the restaurant on September 14, 2008.

{¶ 4} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶ 5} "[W]here negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care." *Heckert v. Patrick*, 15 Ohio St.3d 402, 405 (1984). Actual notice exists where, "from competent evidence, either direct or circumstantial, the trier of the facts is entitled to hold as a conclusion of fact and not as a presumption of law that the information was personally communicated to or received by the party * * *." *In re Estate of Fahle*, 90 Ohio App. 195, 197 (1950). Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. *Id.*

{¶ 6} Plaintiff asserts that defendant had notice that the tree that damaged his restaurant was a potential hazard. On May 23, 2008, plaintiff notified Tim Waln, an ODNR employee at Buckeye Lake, that he was concerned about a tree located next to Smitty's. (Plaintiff's Exhibit 10.) On June 4, 2008, a contractor that had been hired by defendant removed the tree that plaintiff was concerned about. Plaintiff testified that between June 4, 2008 and September 14, 2008, he called Waln informing him that tree branches had fallen on Smitty's and that there was another tree that should be removed. However, plaintiff testified that he did not remember when he made those calls and that he kept no record of such calls. Further, he admitted that he never made any written complaint to defendant about trees located near Smitty's after June 4, 2008.

{¶ 7} Plaintiff presented the testimony of Thomas Sydnor, Ph.D., a board-certified master arborist who has recently retired from The Ohio State University. According to Dr. Sydnor, in 2002 he was hired by DLZ Ohio, an environmental engineering group, to

inspect the trees located along the four-mile earthen dam at Buckeye Lake. He explained that the state wanted to remove all the trees from the dam, but that private property owners who resided near the dam opposed the recommendation to remove the trees. Dr. Sydnor testified that he tagged and numbered all 318 trees located on the dam and he commented upon their condition. According to Dr. Sydnor, the focus of his inspection was to determine whether the integrity of the dam and its soil would be compromised during a "windfall." (Plaintiff's Exhibit 6.)

{¶ 8} The silver maple that fell onto Smitty's on September 14, 2008, was identified by Dr. Sydnor as tree number 178 and he noted in his 2002 report that the tree had decay in the crown, a "hanger," and was in "fair" or "average" condition. (Plaintiff's Exhibit 6.) Dr. Sydnor testified that his notes did not pertain to the focus of the study, which was the integrity of the earthen dam. Dr. Sydnor opined that the decay in tree number 178 was sufficient to cause concern, but he explained that most mature trees have some decay. While Dr. Sydnor identified other trees that posed a potential hazard to adjacent buildings, no such notation was made regarding tree number 178, and he did not recommend removing tree number 178.

{¶ 9} Dr. Sydnor testified that his examination of a photograph of tree number 178 showed that the silver maple had a codominate lead, meaning that the tree had two main stems of almost equal size. He explained that a tree with a codominate lead becomes more unstable as the stems grow such that less live wood connects the two stems. Dr. Sydnor testified that on September 14, 2008, the highest recorded wind speed at Heath airport, located 10 miles away from Buckeye Lake, was 34 miles per hour. He explained that a healthy tree is not expected to fall in winds under 50 miles per hour. Dr. Sydnor stated that tree number 178 fell because there was less "holding wood" in the tree due to the codominate lead.

{¶ 10} Bob Cumbow, an employee of ODNR, testified on behalf of defendant. Cumbow testified that he has been employed by defendant for 31 years and that he currently works in ODNR's Division of Parks and Recreation. Cumbow began working

for ODNR as a seasonal laborer at Buckeye Lake State Park; he eventually became the Assistant Park Manager at Buckeye Lake; he has held several other jobs with ODNR; and, in 2005, he began working in ODNR's central office as Natural Resources Administrator III.

{¶ 11} Cumbow explained that the earthen dam at Buckeye Lake is approximately four miles long. Cumbow testified that portions of the dam have been sold to private landowners who have built structures along the dam; however, ODNR continued to maintain the dam. According to Cumbow, from the time he was a seasonal laborer at Buckeye Lake, the trees on the dam have been a controversial issue between ODNR and the private landowners who live near the dam. Cumbow explained that ODNR engineers did not want trees to be growing on the dam, but that property owners wanted the trees to remain on the dam. Furthermore, the 2002 study completed by Dr. Sydnor was conducted to address the concern of maintaining trees on the dam. Cumbow testified that defendant's division of engineering initiated the survey to determine the condition of the trees on the Buckeye Lake dam.

{¶ 12} Cumbow explained that ODNR has three methods to inspect and maintain trees at Buckeye Lake: (1) law enforcement officers observe the dam each morning during the boating season and visually inspect the trees from a boat; (2) residents living along the dam contact the park office; and (3) Buckeye Lake's maintenance staff perform their normal maintenance duties and make visual inspections of trees.

{¶ 13} To the extent that plaintiff argues that defendant should be liable for its decision to allow trees to grow on the earthen dam, it is well established that "[t]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State,* 14 Ohio St.3d 68, 70 (1984).

{¶ 14} As evidenced by Cumbow's testimony, several ODNR officials were involved in the decision-making process to maintain the integrity of the earthen dam. Further, Cumbow testified that ODNR balanced the potential risk that the trees posed against the desire of the property owners to keep the trees on the dam. Steve Manilla, ODNR's Chief Engineer, wrote an e-mail on May 9, 2002, evidencing that defendant's decision to allow the trees to remain on the dam involved engineering judgment. (Plaintiff's Exhibit 7.) The court finds that such decisions regarding the integrity of the dam involved a high degree of official judgment or discretion. Accordingly, defendant is entitled to discretionary immunity for such decisions.

{¶ 15} Turning to plaintiff's allegations that defendant was negligent in maintaining and inspecting tree number 178, as stated above, plaintiff wrote a letter to Tim Waln in May 2008 regarding a tree on ODNR property that concerned him and the tree was removed by a contractor hired by ODNR shortly thereafter. Plaintiff argues that ODNR did not properly notify its contractor as to which tree was to be removed. Although plaintiff argues that ODNR removed the wrong tree on June 4, 2008, plaintiff's May 23, 2008 letter does not name the specific tree that concerned him, and there is no credible evidence that he informed ODNR that the wrong tree had been removed. Furthermore, plaintiff was unable to recall when he contacted ODNR or to whom he spoke. The court finds that plaintiff's testimony that he contacted ODNR after June 4, 2008 to inform defendant of his concern with tree number 178 is not credible.

{¶ 16} Furthermore, while ODNR may have had notice of some decay in tree number 178 based on Dr. Sydnor's 2002 report, plaintiff presented insufficient evidence to prove that defendant had actual or constructive notice of a hazardous condition in the tree. As Dr. Sydnor explained, most mature trees contain decay. Dr. Sydnor also testified that he did not know what ODNR did to maintain tree number 178. Dr. Sydnor acknowledged that he did not inspect the tree after it fell in 2008 and that he looked only at photographs provided by plaintiff.

{¶ 17} Additionally, Cumbow testified as to the three methods used to inspect trees at Buckeye Lake. Cumbow further explained that inspections done from boats on the lake would be looking for "obvious" problems with trees, such as downed limbs. Cumbow testified that ODNR employees would be able to see a codominate lead on a tree but that decay located in the crown of the tree would not be visible from the boat. According to Cumbow, maintenance staff at Buckeye Lake was trained to look for rot, downed limbs, and a lack of foliage when inspecting trees. Furthermore, tree number 178 was documented in 2002 as being in "average" condition and photographs of the tree show that on September 14, 2008, it maintained significant foliage, a characteristic of healthy trees. The court finds that there is insufficient evidence to show that ODNR had notice that tree number 178 was a hazardous condition prior to September 14, 2008.

{¶ 18} Based on the foregoing, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant breached any duty inasmuch as defendant did not have notice that tree number 178 was a hazard.

{¶ 19} Moreover, defendant has asserted the defense of "Act of God." "The term 'Act of God' in its legal significance, means any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightning and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted. It must be due directly and exclusively to such a natural cause without human intervention. It must proceed from the violence of nature of the force of the elements alone, and with which the agency of man had nothing to do." *Piqua v. Morris,* 98 Ohio St. 42, 47-48 (1918).

{¶ 20} Both at trial and in his post-trial brief, plaintiff acknowledged that an Act of God was involved in this incident, but he argues that defendant's negligence directly contributed to his damage. "'[I]f the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributed to the

plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage.'" *Bier v. New Philadelphia*, 11 Ohio St.3d 134, 136 (1984), quoting *Piqua, supra,* at 49.

{¶ 21} Plaintiff cites *Vondrell v. Ohio Dept. of Natural Resources*, Ct. of Cl. No. 2007-O3358-AD, 2007-Ohio-7232, in support of his assertion that defendant's negligence contributed to his damage. However, the circumstances at issue in *Vondrell* are not analogous to this situation inasmuch as the tree in *Vondrell* was dead for nearly five years before it caused damage and that defendant knew or should have known that the tree was dead and constituted a hazardous condition. *Id.* at ¶ 11. Here, the evidence shows that defendant did not have notice that tree number 178 was a hazardous condition.

{¶ 22} While plaintiff described the remnants of Hurricane Ike as "any other storm," Cumbow, who lived only two miles from Buckeye Lake, recalled that the storm produced unusually high winds and that several trees on his property fell during the storm. The evidence shows that wind speeds during the storm ranged from 34 miles per hour at Heath airport to nearly 75 miles per hour in Columbus, Ohio. Further, Dr. Sydnor testified that he recalled high winds around Ohio during the storm. The evidence showed that the September 14, 2008 storm was so unusual and powerful that the damage to the codominate limbs was attributable to the storm alone, rather than any negligence by defendant. Accordingly, the court finds that plaintiff's claim is barred as an Act of God.

{¶ 23} Finally, to the extent that plaintiff claims that defendant is liable for improperly inspecting and evaluating the trees at Buckeye Lake, defendant is immune under the public duty doctrine.

{¶ 24} R.C. 2743.02(A)(3)(a) states, "Except as provided in division (A)(3)(b) of this section, the state is immune from liability in any civil action or proceeding involving

the performance or nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state."

{¶ 25} R.C. 2743.01(E)(1) states: "'Public duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following:

{¶ 26} "(a) Permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity * * *."

{¶ 27} In order for a special relationship to exist between the state and an injured party, pursuant to R.C. 2743.02(A)(3)(b), all of the following must exist:

{¶ 28} "(i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

{¶ 29} "(ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;

{¶ 30} "(iii) Some form of direct contact between the state's agents and the injured party;

{¶ 31} "(iv) The injured party's justifiable reliance on the state's affirmative undertaking."

{¶ 32} Plaintiff failed to prove that a special relationship existed between him and defendant. Indeed, Cumbow testified that defendant's duties with regard to both the tree management and tree inspection were duties performed on behalf of the general public. Although defendant's employees both communicated with plaintiff concerning various land use issues and responded to plaintiff's concerns regarding trees that were adjacent to his property, the court finds that none of these interactions established a special relationship between plaintiff and defendant.

{¶ 33} For the foregoing reasons, the court finds that plaintiff has failed to prove his claim for negligence.  Accordingly, it is recommended that judgment be rendered in favor of defendant.

{¶ 34} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

James P. Dinsmore                        Roman J. Pallone
Assistant Attorney General               1284 Primrose Place
150 East Gay Street, 18th Floor          Columbus, Ohio 43212
Columbus, Ohio 43215-3130

007
Filed January 30, 2013
To S.C. Reporter August 22, 2013